**PORTER, Price Administrator, v. WHEATLAND BAKERS, Inc.**
Civil Action No. 5073.

District Court, E. D. Pennsylvania.
Oct. 3, 1946.

Charles J. Ware, of Harrisburg, Pa., for plaintiff.

Ralph E. Evans, of Harrisburg, Pa., for defendant.

BARD, District Judge.

This action was brought by the Price Administrator pursuant to section 205(a) (e) of the Emergency Price Control Act of 1942 [1] for an injunction and for treble damages amounting to $6972.54. The complaint alleged that the defendant bakery had violated, and was violating, a regu-

---

[1] Act of January 30, 1942, c. 26, Title II, § 205, 56 Stat. 33, as amended June 30, 1944, c. 325, Title I, § 108, 58 Stat. 640, 50 U.S.C.A.Appendix, § 925(a, e).

lation duly promulgated under the Act and designated as Maximum Price Regulation 319. Although the hearing was originally for the consideration only of plaintiff's application for a preliminary injunction, both parties agreed that the entire case should be disposed of on the basis of the evidence presented. Accordingly, I make the following special

### Findings of Fact.

1. The plaintiff is Paul A. Porter, Price Administrator of the Office of Price Administration, who was substituted for Chester Bowles, the original plaintiff.

2. The defendant is a Pennsylvania corporation engaged in the production and manufacture of bakery products.

3. The sweet yeast raised goods produced by defendant and involved in the current cause were, and are, controlled as to price by Maximum Price Regulation 319, its revisions and amendments.

4. On August 10, 1944, and continuously since then, the defendant made a number of different buns, rolls and cakes, generically designated as sweet yeast raised goods.

5. In establishing the prices it fixed for the above items, defendant computed its cost on the basis of units of a hundredweight of sweet yeast raised goods rather than on the basis of units of each of the individual cakes, rolls and buns included in that classification.

6. In establishing the prices it fixed for the above items defendant included in its costs of ingredients inventory loss due to fermentation, careless handling, and other invisible losses.

### Discussion.

The principal question in this proceeding is the interpretation of M.P.R. 319 as amended. After the adoption of the Emergency Price Control Act of 1942, supra, 50 U.S.C.A.Appendix, § 901 et seq., bakery products were placed under price control pursuant to the General Maximum Price Regulation, freezing prices at the March 1942 level. This general regulation was superseded in February of 1943 by a specific regulation relating to bakery products, designated as M.P.R. 319, which permitted a seller of bakery goods to recalculate and increase its maximum price to compensate for any increase in ingredient and packaging costs. Section 13(b) of this regulation, as amended on October 28, 1944, provided:

"Recalculation of Maximum Prices: During the months of April and October of each year, commencing with the month of April 1944, every producer subject to this regulation shall recalculate his maximum prices for the sale of all commodities sold by him, listed in Appendix A, on the basis of his then existing costs of ingredients and packaging materials, but using the previously reported direct labor costs and markup, except that if a producer of pies has reported his maximum prices on sales of such pies pursuant to sub-paragraph 2 of Section 13(a), he may recalculate his maximum prices by using the weighted average of his then existing costs of ingredients and packaging materials with respect to all pies of a particular size, and his previously reported weighted average of direct labor costs and markup for this size of pie." Appendix A of Revised M.P.R. 319 provided as follows:

"Bakery Products covered by this Regulation and the appropriate Base Periods for calculating Maximum Prices.

| Bakery Products | Base Period |
| --- | --- |
| Fruit Cake | Oct. 1 to Dec. 31, 1942 |
| All other cakes except cookies | March, 1942 |
| Pastries | March, 1942 |
| Doughnuts | March, 1942 |
| Sweet Yeast Raised Goods | March, 1942 |
| Pies | Sept. 14 to Oct. 11, 1941" |

In a previous section of the regulation it was provided that computations of costs for the purpose of establishing maximum prices was to be made on the basis of the cost "per unit of the commodity."

Plaintiff contends that it was the intention and proper interpretation of M.P.R. 319 that each item under the general category of "sweet yeast raised goods," as well as each item under the other general categories, was the "unit of the commodity" upon which costs were to be calculated. Under this interpretation, the cost of each different item made by the defendant should

have been computed separately and each such item should have received its own maximum price.

The evidence is undisputed that until at least April 1, 1945, defendant fixed its maximum prices on the basis of units of a hundredweight of sweet yeast raised goods and not on the basis of the various individual items coming under this classification. As substantiation for its interpretation of the regulation in this manner, defendant contends that the "commodities listed in Appendix A" referred to "sweet yeast raised goods" and included no further breakdown; that "sweet yeast raised goods" are considered as a class in the baking industry because they have a basic common dough and have been priced uniformly per hundredweight; that this interpretation did not result in any further increase in price to the public because a higher price in one item was necessarily compensated by a lower price in another, so that in fact the public paid under what would have been the ceiling computed on individual item units in an amount substantially equivalent to that which it paid over such ceilings; and that the plaintiff's interpretation would require bakeries to revise drastically their accounting systems in violation of Section 2(h) of the Emergency Price Control Act,[2] which provides:

"(h) The powers granted in this section shall not be used or made to operate to compel changes in the business practices, cost practices or methods, or means or aids to distribution, established in any industry, or changes in established rental practices, except where such action is affirmatively found by the Administrator to be necessary to prevent circumvention or evasion of any regulation, order, price schedule, or requirement under this Act."

█ While I do not think that defendant's interpretation was arbitrary or wholly without merit, I am convinced that it was not correct. Certainly, under the amendment to M.P.R. 319 made in October 1944, making an exception for producers of pies which permitted them to recalculate their maximum price by using the weighted average of their cost of ingredients and packaging materials "with respect to all pies of a particular size," it must have been entirely clear that the Office of Price Administration had intended items, rather than categories such as "sweet yeast raised goods," or "pies" as the unit for establishing maximum prices; and that except as to pies, that unit was to be used in the computation of costs. Since the violations complained of in the present proceeding took place between August 1944 and April 1945, it appears that defendant persisted in its interpretation after it had, in the amendment relating to pies and making an exception as to them, a clear indication that it was not the intention of the regulation to permit the use of averaged costs for categories of bakery products other than pies. It also seems quite clear that the price formula did not permit defendant to include in "costs of ingredients" losses due to fermentation and similar "invisible losses" in inventory.

Defendant's argument that plaintiff's interpretation would necessitate a drastic revision in the cost accounting methods employed by defendant and by other bakeries carries little force. The formula for establishing maximum prices did not purport to nor did it require any revision of defendant's accounting system or methods. It merely fixed a basis for establishing maximum prices which at the most might require defendant to adduce certain cost figures which might not be otherwise adduced in its normal accounting methods. Indeed, defendant produced evidence that it began complying with the regulation as soon as it understood that its original interpretation thereof was not that which was intended by the Administrator, and that it has been in compliance ever since. The evidence indicates that this transition involved few of the difficulties as to accounting or as to the maintenance of certain uniformity of prices within sub-categories of sweet yeast raised goods which defendant contended would result from adopting plaintiff's interpretation of the regulation.

[2] Act of January 30, 1942, c. 26, Title I, § 2, 56 Stat. 24, as amended June 30, 1944, c. 325, Title I, § 102, 58 Stat. 632, 50 U.S.C.A.Appendix, § 902(h).

I am convinced, however, that the defendant acted in good faith. It made no effort to conceal its method of establishing its maximum prices and offered complete cooperation to the investigators of the plaintiff. Moreover, as a result of its original interpretation of the regulation, it charged prices for many items below the maximum prices which it could have charged for those items if it had construed the regulation in accordance with plaintiff's interpretation. On no single item was its overcharge more than one cent, but the total of the overcharges during the period in suit was $2324.18. Defendant appears to have begun compliance with the regulation in April of 1945.

Under all these circumstances, I do not feel that an injunction is necessary. There is no evidence that either since this action, or for several months prior thereto, defendant has been in violation of the regulation, although it has contested in this action plaintiff's interpretation thereof. The denial of an injunction is of course without prejudice to plaintiff's right to seek such relief again if it should charge defendant with any further violations since April of 1945.

There remains the question of damages. Section 205(e) of the Emergency Price Control Act of 1942, supra, permits the court to fix damages in its discretion in an amount up to three times the amount of the overcharges. The plaintiff's request for treble damages will be denied. I will fix the damages at $2324.18, the actual amount of the overcharges.

· I make the following

#### Conclusions of Law.

1. From August 10, 1944, to April 9, 1945, defendant was engaged in acts which violated Section 4(a) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 904(a), in that it violated Maximum Price Regulation No. 319, as amended, by selling certain items under the category of sweet yeast raised goods at prices which were one cent per unit in excess of the maximum prices permitted by said regulation, the total of said overcharges amounting to $2324.18.

2. Judgment is entered in favor of plaintiff on behalf of the United States of America and against the defendant in the sum of $2324.18.

3. Plaintiff's prayer for an injunction is denied.